UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALVIN T. STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER STEWART A. WAY, et al.,<br><br>Defendants. | Civil Action No. 15-7261 (FLW)<br><br><br><br>OPINION |

**WOLFSON, United States District Judge:**

  I.    **INTRODUCTION**

Plaintiff Calvin T. Stevens filed the instant Complaint alleging violations of his constitutional rights arising from his arrest, and resulting imprisonment, on August 27, 2015. The Court previously granted his application for IFP.[1]  (ECF No. 2.)  At this time, the Court must screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons explained below, the Court will dismiss the Complaint for failure to state a claim

---

[1] A copy of the Court's Order was sent to Middlesex County Adult Correctional Center and was returned as undeliverable.  (ECF Nos. 3-4.)  In the cover letter accompanying his Complaint, Plaintiff provided another address to be used if he was released from jail.  (ECF No. 1-1.)  As such, the Court will direct the Clerk of the Court to send copies of this Opinion and accompanying Order to that address.

1

for which relief may be granted under § 1915(a) and will grant Plaintiff leave to file an Amended Complaint within 30 days.

## II.     FACTUAL BACKGROUND

Plaintiff's Complaint in this civil action provides few facts regarding the alleged constitutional violations that give rise to his claims against City of New Brunswick Police Officers Steward A. Way and Alexan. J. Uzunis (collectively referred to as the "Officer Defendants").  His Complaint alleges that the Officer Defendants lacked probable cause to arrest him "for an alleged [sic] violation of domestic violence" which resulted in his false arrest and imprisonment.  (ECF No. 1, Complaint at 4-5.)  It appears from his Complaint that the domestic violence allegation was made by Deborah E. McKimm.  (*Id.*, Complaint at 5.)   Plaintiff also alleges that the Officer Defendants "denied him equal protection and due process of the law." (*Id*).  Plaintiff seeks damages, an internal affairs investigation, and "release from the charges" currently pending against him in family court.  (*Id.*, Complaint at 6-7.)

Plaintiff has also attached to his Complaint and asked the Court to consider a document entitled "Notice of Affidavit"(hereafter referred to as the "Affidavit"), which appears to relate to a separate action pending in the Superior Court of New Jersey, Middlesex County.[2]  In that action, Plaintiff has sued Ms. McGill and the New Brunswick Police Department.  From that Affidavit, the Court gleans the following facts that are relevant to the instant action against Defendants Way and Uzunis.

---

[2] The Court does not construe Plaintiff to name Ms. McKimm and the City of New Brunswick as Defendants in this action.  The Court will however, consider the facts in the Affidavit that relate to the alleged constitutional violations by Defendants Way and Uzunis.  To the extent Plaintiff files an Amended Complaint with respect to Defendants Way and Uzunis, he may also add additional claims against other Defendants involved in the alleged misconduct.

At the time that the allegations giving rise to Plaintiff's Complaint occurred, Defendant McKimm was allegedly living in squalor and using drugs. (*See* ECF No. 1-2, Affidavit attached to Complaint, at page 2-3.) On July 9, 2015, Plaintiff was released from jail and went to visit Ms. McKimm at her rooming house, where he discovered her injured and unconscious. (*Id.*) He alleges that Ms. McKimm told him that sh had fallen down the stairs and injured six of her ribs. (*Id.* at 3.) He also alleges that "all injuries were done prior to her release from jail on [July 9, 2015]." (*Id.*) Plaintiff called the police, who responded to the scene along with Emergency Medical Services ("EMS"). (*Id.* at 3.) Plaintiff's Affidavit initially states that the arriving officers, described as four males and one female, "where [sic] terrified to enter the room[,]" and does not identify Officer Way and Uzunis as two of the four male officers. (*Id.*) Later in the Affidavit, however, Plaintiff states that Officers Ways and Uzunis were "both present to that call [at McKimm's address.]" (*See id.* at page 7.)

According to the Affidavit, Ms. McKimm was hospitalized with a fractured collarbone and ribs, and Plaintiff visited her in the hospital on July 12, 2015. (*Id.* at 4.) Plaintiff also states that he retrieved some of his belongings from Ms. McKimm's room, and moved to the fourth floor of the rooming house. (*Id.* at 3-4.)

On July 15, 2015, Ms. McKimm allegedly made false reports to law enforcement and filed a temporary restraining order ("TRO") against Plaintiff, alleging that he had committed a "simple assault" against her. (*Id.* at 4.) Although Plaintiff had not yet been served with the TRO, unidentified New Brunswick Police Officers allegedly knocked at his door on July 16, 2015 and informed him that he was in violation of the TRO. (*Id.*) These unidentified New Brunswick police officers allegedly "assaulted him with handcuffs" and took him to the police

3

station where he was served with the TRO.  (*Id.*)  Plaintiff remained in jail from July 16, 2015 to July 20, 2015.  (*Id.*)

On August 11, 2015 and August 12, 2015, Ms. McKimm again made false reports to law enforcement stating "events that never ever took place."  (Id. at 5-6.)  Plaintiff alleges that Defendant Officers Way and Uzunis took these statements from Ms. McKimm.  (*Id.* at 6-7.)  As evidence of the falsity of Ms. McKimm's Complaints about him, Plaintiff alleges that Ms. McKimm's second false report states that Plaintiff violated the TRO on August 12, 2015 at 1:36 p.m.  At that date and time, however, Plaintiff alleges that he was filing a TRO against Ms. McKimm at the courthouse and could not have been in two places at once.  (*Id.* at 6.)  With respect to Officers Ways and Uzunis, Plaintiff alleges that they "used no discretion in probable cause in taking a statement from [Ms. McKimm]" (*Id.*)

On August 27, 2015, Plaintiff encountered Officers Way and Uzunis while walking on French and Louis Streets. (*Id.* at 6.)  The Officers shouted to him that there was a warrant out for his arrest, but allegedly did not search "the system" or take his identification.  (*Id.*)  Plaintiff further states that Way and Uzunis "arrested an innocent West-Indian man on August 27, 2015 . . . in conjunction with an illegal complaint[.]"  (*Id.* at 7.)  At the time the affidavit was drafted, Plaintiff had been in jail for 21 days.  (*Id.*)

In his Complaint, Plaintiff also alleges that the individuals in the New Brunswick Police Department have "used enforcement of the law to oppress the rights of citizens like [himself]" and have "not us[ed] the proper discretion when making decisions affecting the life and liberty of minorities in New Brunswick."  (ECF No. 1, Complaint at 5.)  Plaintiff's affidavit further states that his arrest by Officers Way and Uzunis was motivated by racial prejudice and bias.  (*Id.* at 7.)  To support this allegation, he cites to the "numerous lawsuits" against the New Brunswick Police

4

Department, including a lawsuit by its own African American police officers.  Plaintiff's affidavit also states that he believes that Officers Ways and Uzunis are unstable, and that he fears retaliation by them and other police officers.  (*Id.* at 6-7, 9.)

### III.    STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   ANALYSIS

The Court construes Plaintiff's Complaint and Affidavit to raise two distinct sets of constitutional claims related to his arrest by the Defendant Officers. First, by alleging that the Officer Defendants lacked probable cause to arrest him, he asserts claims of false arrest and false imprisonment arising under the Fourth Amendment. Second, by alleging that his arrest was motivated by race discrimination, Plaintiff asserts a claim of selective enforcement arising under

6

the Equal Protection clause of the Fourteenth Amendment.³ The Court begins with Plaintiff's claims for false imprisonment and false arrest.

### a. False Arrest and False Imprisonment

The Court construes Plaintiff to assert claims under the Fourth Amendment for false arrest and false imprisonment stemming from his arrest by the Officer Defendants on August 27, 2015.⁴ It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. *See Walmsley v. Philadelphia*, 872 F.2d 546 (3d Cir. 1989) (citing cases); *see also Albright v. Oliver*, 510 U.S. 266, 274 (1994) (a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without

---

³ Plaintiff's allegations that the Officer Defendants arrested him (1) without probable cause and (2) due to his race, indeed, raise two distinct claims for relief. Probable cause depends on the objective facts and circumstances of the arrest; the subjective intent of the arresting officer is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996). As explained by the Supreme Court in *Wren*, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Thus, a plaintiff cannot base a false arrest claim on the arresting officer's alleged racial animus, *see e.g.*, *Alatraqchi v. City & Cty. of San Francisco*, No. C-99-4569 PJH, 2001 WL 637429, at *2 (N.D. Cal. May 30, 2001) (explaining same), but an arrest motivated by racial animus may state a claim for selective enforcement, provided the other elements of the claim are met. *See, e.g., Dique v. New Jersey State Police*, 603 F.3d 181, 184 (3d Cir. 2010) (construing claims for false arrest and selective enforcement); *Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201, 203-204 (3d Cir. 2011) (same).

⁴ Although the Affidavit states that Plaintiff was also arrested July 16, 2015, the arresting officers are unidentified. To the extent Plaintiff seeks to raise claims related to this arrest, he must file an Amended Complaint, which either identifies the officers or names them as John Doe Defendants.

probable cause.[5] *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988); *see also James v. City of Wilkes–Barre*, 700 F.3d 675, 680 (3d Cir. 2012).

A claim for false imprisonment arises when a person is arrested without probable cause and is subsequently detained pursuant to that unlawful arrest. *See Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201 (3d Cir.2011) (*per curiam*) (citing *Groman*, 47 F.3d at 636). Thus, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause. *See Johnson v. Camden Cnty. Prosecutors' Office*, No. 11–3588, 2012 WL 273887, at 4 n. 2 (D.N.J. Jan.31, 2012) (citing *Groman*, 47 F.3d at 636).

Notably, "[t]he proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling*, 855 F.2d at 141. "'Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d

---

[5] Where an arrest is made pursuant to a warrant, establishing a lack of probable cause requires a plaintiff to show "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Eckman v. Lancaster City*, 529 F. App'x 185, 186-87 (3d Cir. 2013) (citing *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (internal quotations and citation omitted)). To determine whether an omission is material, Courts must predict whether a reasonable judge would conclude that a corrected affidavit was insufficient to establish probable cause. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). Here, it appears that Plaintiff was arrested pursuant to a warrant (*see* ECF No. 1, Compl. at 6-7), but it is not clear from the Complaint and Affidavit whether either of the Officer Defendants actually applied for the arrest warrant. As such, for purposes of screening the Complaint, the Court analyzes Plaintiff's claims against the Officer Defendants under the more general standard for assessing probable cause for arrest.

480, 482 (3d Cir.1995)); *see also Mina tee v. Phila. Police Dep't*, 502 F. App'x 225, 228 (3d Cir. 2012) (citation omitted).  Thus, the arresting officer must only reasonably believe at the time of the arrest that an offense has been or is being committed, a significantly lower burden than proving guilt at trial.  *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005); *see also Hayes v. Morris*, No. CIV. 13-0608 PGS LHG, 2013 WL 4046022, at *3 (D.N.J. Aug. 8, 2013) (same).

Here, Plaintiff appears to contend that the Defendant Officers did not have probable cause to arrest him because Ms. McKimm's statement to the Officer Defendants was false.  The central issue, however, is not whether Plaintiff <u>actually committed</u> the offenses complained of by Ms. McKimm; rather, the issue is whether the Defendant Officers, who allegedly took Ms. McKimm's false statement, <u>reasonably believed</u> that Plaintiff committed the offenses alleged by Ms. McKimm, the complaining witness.

The Third Circuit has "held that a victim's identification, even without any other evidence, will 'usually be sufficient to establish probable cause.'" *Cooper v. City of Philadephia*, No. 15-1431, 2016 WL 210459, at *1 (3d Cir. Jan. 19, 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000).  This rule, while not absolute, is subject only to limited exceptions for cases where the officer is aware of "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability." *Id.*  In such instances, the identification might be "fatally undermined." *Id.*; *see also Quinn v. Cintron*, No. CIV.A. 11-02471, 2013 WL 5508667, at *4 (E.D. Pa. Oct. 3, 2013) ("Generally, police may rely on the statements of a victim or eyewitness to a crime when making a probable cause determination as it is well-established that when an officer has received ... information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause.")

(citations omitted).  Additionally, police do not have a constitutional duty to investigate a defendant's protestations of innocence or to search for evidence of affirmative defenses prior to making an arrest.  *See, e.g.*, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (stating police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed.")

    Here, Plaintiff fails to state a claim for false arrest, and the resulting false imprisonment, because he admits in the Affidavit that the Officer Defendants arrested Plaintiff based on Ms. McKimm's allegedly false statement that he had violated the TRO, and he provides no facts that would suggest that the Officer Defendants knew he could not have committed the offenses <u>or</u> that the Officer Defendants had reason to doubt Ms. McKimm's reliability when they took her allegedly false statement and subsequently arrested Plaintiff for violating the TRO.  Similarly, Plaintiff has alleged in his Complaint that Ms. McKimm has an unspecified mental illness (ECF No. 1, Complaint at page 1), but he does not allege that the Officer Defendants <u>knew</u> that Ms. McKimm was mentally ill and that they should have doubted her reliability due to this unspecified mental illness.  Finally, the Affidavit appears to state that the Officer Defendants were among the officers that responded to the scene at Ms. McKimm's room on July 9, 2015 (*see* ECF No. 1-2, Affidavit at page 7), but Plaintiff's Complaint and Affidavit do not suggest that they knew she was an unreliable complaining witness based on their prior dealings with her.  In sum, to state a claim for false arrest and false imprisonment, Plaintiff must provide facts suggesting that the Officer Defendants knew that Plaintiff did not violate the TRO or that they had some reason to doubt the reliability of Ms. McKimm's statement.  As such, the Court dismisses these claims without prejudice at this time.  To the extent Plaintiff is able to provide

facts to overcome the deficiencies notes herein, he may file an Amended Complaint within 30 days of the date of the Order accompanying this Opinion.

### b. Selective Enforcement under the Fourteenth Amendment

The Court also construes Plaintiff to allege that his arrest was based on the Defendant Officers' improper racial motives, *i.e.*, that he was arrested because he is a West Indian man. As explained by the Third Circuit in *Davis v. Malitzki*, 451 F. App'x 228, 234 (3d Cir. 2011), "[s]elective prosecution is a form of discriminatory law enforcement that has been held to violate the Equal Protection Clause of the Fourteenth Amendment since *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), which held officials liable for 'illegal discrimination' when they 'applied and administered' a facially neutral law 'with an evil eye and an unequal hand.'" To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an 'unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)); *see also Johnson v. Camden Cty. Prosecutors' Office*, No. CIV. 11-3588 RMB, 2012 WL 273887, at *3 (D.N.J. Jan. 31, 2012).

The Court finds that Plaintiff has not pleaded any facts showing that he treated differently than other similarly situated individuals, *i.e.*, that non-West Indian or non-minority individuals were <u>not</u> arrested for violating TROs. Instead, Plaintiff points generally to the "numerous lawsuits" against the New Brunswick Police Department, including a lawsuit by African American police officers. Because these facts, standing alone, do not suggest selective enforcement based on race, the Court will dismiss this claim without prejudice. To the extent Plaintiff is able to supplement his Complaint with facts to overcome this pleading deficiency, he

may file an Amended Complaint within 30 days of the date of the Order accompanying this Opinion.

## V.     CONCLUSION

For the reasons explained in this Opinion, the Complaint is dismissed without prejudice. Plaintiff, however, has leave to file an Amended Complaint within thirty-days from the date of the Order accompanying this Opinion.  An appropriate Order follows.

/s/ Freda L. Wolfson  
Freda L. Wolfson  
United States District Judge

Date: May 24, 2016